1  
2  Adam R. Pechtel / WSBA #43743  
   Pechtel Law PLLC  
3  21 N Cascade St  
   Kennewick, WA 99336  
4  Telephone: (509) 586-3091  

5  Attorney for Defendant  

6  

7  United States District Court  
   Eastern District of Washington  
8  Before the Hon. Salvador Mendoza, Jr.  

   United States of America,
9                                              No. 4:19-CR-6049-SMJ-1
                       Plaintiff,
10                                             Defendant Castillo's Motion to
   v.                                          Dismiss Indictment
11

12 Ivan Renteria Castillo.                     April 2, 2019 at 9:30 AM
                                               *With oral argument*
13                     Defendant.

14    The United States knew that Efrain Carrillo Gonzalez ("Mr.

15 Carrillo) would give material and favorable testimony for Mr.

16 Renteria Castillo ("Mr. Castillo") yet deported him to Mexico anyway.

17 By doing so, the United States violated Mr. Castillo's right to

18 compulsory process under the Sixth Amendment. This violation of a

19 fundamental constitutional right requires the Court to dismiss the

20 indictment with prejudice.

Defendant Castillo's Motion to  
Dismiss Indictment - 1

### A.   Summary of Facts

The United States alleges that Mr. Castillo, Mr. Carrillo, and Mr. Solares Gastelum ("Mr. Solares") travelled on August 9, 2019 from California to Washington in a vehicle containing methamphetamine.[1] Law enforcement officers began following the vehicle in Kennewick, Washington and continued following it until it stopped in Mesa, Washington.[2] When the vehicle stopped in Mesa around 2:00 PM, Mr. Solares and Mr. Carillo were detained by TFO Rogel for immigration violations.[3] Law enforcement officers were not able to locate Mr. Castillo until 8:00 PM that evening at which time he was detained by TFO Rogel for immigration violations.[4] TFO Rogel and SA Pratt transported all three subjects to Ritzville, Washington where they were transferred to the custody of Border Control agents.[5]

Law enforcement officers attempted to interview all three subjects three days later on August 12, 2019 in Richland, Washington.[6] Mr. Castillo exercised his constitutional right to remain silent, but Mr.

---

[1] Bates 10000109 (meth); 10000133-134 (travel).
[2] Bates 00000202.
[3] Bates 10000129 (Solares); Bates 10000131 (Carrillo).
[4] Bates 1000094 (Castillo).
[5] *See supra* fn.2 and fn.3.
[6] Bates 10000096 (Castillo); Bates 10000120, 10000122 (Carrillo); Bates 00000349 (Solares).

Solares and Mr. Carrillo gave recorded interviews.[7] Mr. Castillo only knows the substance of Mr. Solares' interview and Mr. Carrillo's interview based on identical summaries included in four search warrant applications. Mr. Castillo also received a law enforcement report that summarized Mr. Carrillo's interview (but not co-defendant Solares' interview).[8] Mr. Castillo requested copies of Mr. Carrillo's recorded interview on September 30, 2019 from the United States, but did not receive the recording until January 14, 2020.[9] The filing of this motion was delayed to obtain a side-by-side translation of the recorded interview.

According to the search warrant applications, Mr. Carrillo told the interviewing officers:

> CARRILLO and SOLARES [] drove together to Los Angeles, California. CARRILLO advised that he and SOLARES [] stayed in a hotel for approximately two days. While in the Los Angeles area, [] SOLARES [] told him to stay at the hotel while SOLARES [] was gone for approximately one hour. This was the only time CARRILLO [] was not with SOLARES []. While with SOLARES [], CARRILLO overheard SOLARES [] on the phone constantly. The phone calls were of short duration and the conversations were in code that CARRILLO believed was discussion to arrange the transportation of narcotics…. CARRILLO, SOLARES [] and

---

[7] Bates 10000096 (Castillo); Bates 10000120-121 (Carrillo); Bates 00000244-247, 279-282, 314-317, 349-352 (Solares; Carrillo)
[8] Bates 00000244-247, 00000279-282, 00000314-317, 00000349-352, 10000120-121.
[9] Letter from Van Marter to Pechtel (January 14, 2020).

Defendant Castillo's Motion to
Dismiss Indictment - 3

[CASTILLO] were all in the white Kia Optima and [] SOLARES [] and [CASTILLO] switched off driving. On the return trip to Washington, [] SOLARES [] and CARRILLO picked [CASTILLO] up somewhere north of Los Angeles. CARRILLO [] had never met [CASTILLO] before. CARRILLO [] was unaware there were narcotics in the vehicle.[10]

According to FBI Special Agent Brett Grover, Mr. Carrillo told officers:

> [CARRILLO] was invited to travel to California by DUVIEL HUMBERTO SOLARES GASTELUM.
>
> They left Tuesday (August 6, 2019) and traveled to Los Angeles. They stayed in a hotel. IVAN ALONSO RENTERIA CASTILLO did not travel to Los Angeles with them.
>
> While in Los Angeles [SOLARES] was consistently making phone calls.
>
> [SOLARES] left one time on foot and told [CARRILLO] to stay in the hotel for approximately one hour.
>
> [CARRILLO] never saw drugs. However, [SOLARES] was conducting short duration phone calls using code words.
>
> [SOLARES] had two phones on the trip. He passed one to [CARRILLO] and asked him to hold it before they were arrested. The iPhone was his and the other phone belonged to [SOLARES]. [CARRILLO] provided the code to his phone as his date of birth ([redacted]).
>
> [SOLARES] was going to help [CARRILLO] with some debt that he owed for a court case for traveling with him to California
>
> [CARRILLO] had never met CASTILLO before they picked him up on Thursday (August 8, 2019) on their way back

---

[10] Bates 00000246; 281; 316; 351.

Defendant Castillo's Motion to
Dismiss Indictment - 4

> to Washington. They picked him up on the side of a road near a gas station. He only had a small plastic bag with him.
>
> When they were pulled over [SOLARES] told CASTILLO that it was over. [SOLARES] and [CASTILLO] traded off driving during the trip.[11]

Attached hereto as Exhibit A is a copy of a side-by-side translation of the entire recorded interview prepared by Sharon Yedidia. Ms. Yedidia will be qualified as an expert witness in Spanish translation at the hearing on this motion and authenticate the exhibit.

Shortly after 4:00 PM on August 7, 2019, Defendant Solares purchased brake pads at an AutoZone store in Los Angeles, California.[12]

Law enforcement executed a search warrant on the vehicle on August 13, 2019 and found ten packages of methamphetamine in concealed in the trunk of the vehicle.[13] Two days later, ICE Officer Jeffrey White transferred custody of Mr. Castillo and Mr. Solares to TFO BJ Moos and ICE Officer Ruiz pursuant to an arrest warrant.[14]

---

[11] Bates 10000120-121.
[12] Bates 20000025.
[13] Bates 00000352.
[14] Bates 10000105.

Defendant Castillo's Motion to
Dismiss Indictment - 5

1 The United States deported Efrain Carrillo to Mexico on October 7, 2019.[15]

**B.    Law**

"In all criminal prosecutions, the accused shall enjoy the right … to have compulsory process for obtaining witnesses in his favor…." U.S. CONST. amend. VI. However, "the prompt deportation of illegal-alien witnesses" is justified by "the responsibility of the Executive Branch faithfully to execute the immigration policy adopted by Congress[.]" *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872, 102 S. Ct. 3440 (1982). This statutory duty to deport, however, is balanced against the accused's right to compulsory process under the Sixth Amendment. *See United States v. Leal-Del Carmen*, 697 F.3d 964 (9th Cir. 2012). This balance requires the government to make a "good-faith determination that [the witness] possess[es] no evidence favorable to the defendant in a criminal prosecution." *Id*. To establish a violation, the accused must show "that the evidence lost would be both material and favorable to the defense." *Id*. at 573.

---

[15] Bates 10000190.

The Ninth Circuit interprets this as "a two-pronged test of bad faith and prejudice." *United States v. Dring*, 930 F.2d 687, 693 (9th Cir. 1991); *accord United States v. Velarde-Gavarrete*, 975 F.2d 672, 675 (9th Cir. 1992). "The question of bad faith thus turns on what the government knew at the time it deported the witness." *United States v. Leal-Del Carmen*, 697 F.3d 964, 970 (9th Cir. 2012). Specifically, "if the government interviews the witness or has other information suggesting that [the witness] could offer exculpatory evidence, the government may not deport him without first giving defense counsel a chance to interview him." *Id.* To be material, the evidence must have the *possibility* of affecting the outcome of the trial. *United States v. Leal-Del Carmen*, 697 F.3d 964, 971 (9th Cir. 2012) (*quoting Valenzuela-Bernal*, 458 U.S. at 868) ("Implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial.").

Here, the government was aware that Mr. Carrillo "could offer exculpatory evidence" for Mr. Castillo. Mr. Castillo is charged with possessing a controlled substance with the intent to distribute. ECF No. 24. To convict, the government must prove beyond a reasonable doubt that Mr. Castillo **knowingly** possessed methamphetamine.

*See e.g., United States v. Orduno-Aguilera*, 183 F.3d 1138, 1140 (9th Cir. 1999); *United States v. Seley*, 957 F.2d 717, 721 (9th Cir. 1992). Thus, any evidence that Mr. Castillo did ***not know*** there was a controlled substance in the vehicle is material and favorable to his defense. Mr. Carrillo's interview demonstrated that the methamphetamine was mostly likely put into the vehicle in Los Angeles since (1) he identified no alternative purpose for Mr. Solares to travel to Los Angeles, (2) while in Los Angeles, Mr. Solares made many short phone calls using code words that Mr. Carrillo interpreted to be about drug trafficking, and (3) no other alternative locations were identified from which the drugs could have been put in the vehicle (viz. all Mr. Castillo had with him when he got into the vehicle was "a small plastic bag"). Since Mr. Carrillo also told officers that Mr. Castillo did not travel to Los Angeles with them and they actually picked him up north of Los Angeles, then Mr. Castillo could not have been present when the methamphetamine was put into the vehicle. This strongly corroborates his lack of knowledge defense and is not available from any other available witnesses. Furthermore, Mr. Carrillo would testify that Mr. Castillo and co-

Defendant Castillo's Motion to
Dismiss Indictment - 8

defendant Solares hardly spoke at all during the drive to Washington and they only discussed family, not "business."

Mr. Castillo thus establishes both prongs of the test. First, Mr. Carrillo had material and favorable testimony for Mr. Castillo. Second, the Government was aware of this testimony and deported Mr. Carrillo anyway. The question then turns to the appropriate remedy.

Simply permitting Mr. Castillo to introduce Mr. Carrillo's hearsay statements at trial is inadequate. Mr. Castillo has the constitutional right to ask not only the same questions that law enforcement officers asked, but to fully develop Mr. Carrillo's testimony. This would include details such as (1) Mr. Carrillo did not hear Mr. Solares speaking on the phone with Mr. Castillo in Los Angeles, and (2) they did not discuss controlled substances during the drive to Washington, and (3) they picked up Mr. Castillo more than seven hours north of Los Angeles, and (4) Mr. Castillo's small plastic bag was too small to hold the ten bundles of methamphetamine, and (5) what reason Mr. Solares gave to Mr. Carrillo for disappearing for an hour, and (6) why Mr. Solares purchased brake pads in Los Angeles, among other testimony.

1 Simply permitting Mr. Castillo to introduce Mr. Carrillo's hearsay
2 statements at trial is an insufficient remedy. The only viable remedy
3 is dismissal of the indictment. While this is severe remedy, it is the
4 least severe remedy that can protect Mr. Castillo's constitutional
5 right to compulsory process.
6 A proposed order is filed herewith.

Dated: August 28, 2019        Respectfully Submitted,

s/Adam R. Pechtel
Adam R. Pechtel/ WSBA #43743
Attorney for Defendant
Pechtel Law PLLC
21 N Cascade St
Kennewick, WA 99336
Telephone: (509) 586-3091
Email: adam@pechtellaw.com

SERVICE CERTIFICATE

I certify that on March 2, 2020, I electronically filed the foregoing ***Defendant Castillo's Motion to Dismiss Indictment*** with the District Court Clerk using the CM/ECF System, which will send notification of such filing to the following:

Stephanie Van Marter, Attorney for Plaintiff

                                              s/Adam R. Pechtel
                                              Adam R. Pechtel/ WSBA #43743
                                              Attorney for Defendant
                                              Pechtel Law PLLC
                                              21 N Cascade St
                                              Kennewick, WA 99336
                                              Telephone: (509) 586-3091
                                              Email: adam@pechtellaw.com